May it please the Court, good morning. My name is Michael Burke. I am with the Federal Public Defender's Office and I am appearing this morning on behalf of Mr. Eller. I will attempt to keep track of the time and I will try to reserve three minutes of my time for rebuttal. With the Court's permission, I would like to address this morning the primary, the first issue in the brief. Specifically, whether the search of Mr. Eller's Yahoo account from the date of its creation was overbroad. Particularly in light of the fact that the only information that the magistrate had with regard to probable cause for the search was that Mr. Eller received child pornography from another Yahoo user in the Philippines between January and May of 2012. Affirming the District Court's denial of the motion to suppress in this Court would result in precedent that provides that probable cause to believe that on one occasion a defendant received, knowingly or otherwise, a single email that the contents of which violate federal law justifies a search of the entirety of that defendant's emails and instant messages from the date of the account's creation, regardless of how many years that might encompass. Do you agree that the period forward from 2012, there was probable cause to that? So if there's probable cause that in early 2012 for several months he's communicating with this account and is receiving child pornography, that there'd be probable cause to start from that date and go forward, but maybe not back seven years to the start of the account. What about the forward portion? I disagree, Your Honor, because the fact that the defendant received one email in one period of time does not provide probable cause to believe. Well, but the affidavit also explains, you know, how child pornographers usually work and they usually don't, you know, do one thing and that's it. You know, that they go forward, they build collections, and they develop these relationships. So once you've established the relationship within a particular time period, why wouldn't there then be probable cause going forward? I mean, I understand the argument that going back to the opening of the Yahoo account seven years earlier, maybe there isn't probable cause there, but why not going forward? I would say that because we look at the specific situation, and what we are talking about here is an email account, which, as the Court is well aware, contains a wide array of personal information that belongs to the owner of the account. That to allow a generic search of every email, every instant message from 2012 to 2014, in this case, was overbroad. Particularly because, in this case, we know that the FBI submitted to Yahoo a letter asking them to freeze the account. We know that the evidence would not have dissipated, would not have been destroyed. Mr. Eller could not have done that. So there is no reason in this case that the government could not, that the magistrate judge could not have granted a search warrant based on probable cause to search the particular time frame at issue. Had that probable cause been substantiated by the search, the government could easily have come back with another request for a search warrant to cover the time in which Your Honor suggests. But, as we know, in this case, that evidence was never found upon issuance of the search warrant. There was no evidence of an email from the particular defendant, the particular Philippines user in this case. So I disagree. I think that it invites a general rummaging of his account based on the receipt. And I think that's an important factor in this court, in this case. But what about the period, I mean, I understand your dispute about what the relevant period is, but for the period for which there is probable cause, then it would certainly be reasonable to take, to want to go through all of the emails and messages in that time period to find the ones that are called for in the warrant, right? I'm not sure I follow. You said before the period of time? No, within the period of time for which there is probable cause. So there, I mean, you refer to it as general rummaging, but you're not going to find the messages in the relevant time unless you go through the messages. And I absolutely agree, Judge Collins. And I've also argued in the brief that there would have been probable cause to search the entirety of his account for emails from the particular Philippine user who was alleged to have sent him the child pornography. And that would have, you know, that would have allowed the government to see if this was an ongoing problem, whether Mr. Eller fell into the category of the collector of child pornography, which is something that you will see in every affidavit. These are, they're not filler, but they're a bit of a fluff, because the FBI knew nothing about Mr. Eller at all. They had no reason to suspect that he was a collector of child pornography. They had no reason to know that perhaps he never even requested the email. He was the recipient of the email. So what the court is saying, what the holding here would be, that the receipt of a single email of child pornography or an email that somehow otherwise violates federal law opens up a search of the entirety of a defendant's account. But counsel, if I could jump in here, because the question to me is not whether the warrant was okay. The question is whether the evidence needs to be suppressed. Those are two different inquiries. The government has argued good faith. What's your response to that? This court has held that good faith exception is not permitted when you have an overbroad warrant. There is no good faith in relying. The FBI knew, or should have known, that there was not good faith to support a request to search the entirety of a person's email account based on the existence of one received email. So you're saying that United States v. Cal prevents us from holding that an overbroad warrant can still be upheld. Not upheld, but the evidence would not be suppressed based on good faith. That is the case that we cite in the brief, and I believe that that is correct. Do you know of any other cases, that was 1995 I think that case was decided. So in the past 27 years, do you know of any other cases that have read Cal that way? I am not able to cite any for you right now. I would be happy to provide supplemental authority to follow up on that. But standing here right now, I am not sure of any cases. They don't jump to mind. But I don't think the principle is that out of the norm. I am just trying to understand why, if good faith applies in all these other instances, maybe the agents went a little too far, maybe they got it wrong. But if you read Leon, I don't see why Leon would prevent good faith from applying in an overbreath as opposed to many other instances. To be clear, it doesn't always apply in an overbreath. If I said that, I misspoke. But in an overbreath of this enormity, you cannot find... Okay, now that I appreciate. You're saying this one sticks out so badly is what you're saying. And we must always look at the particular case in the Supreme Court. No, that's fair. Because I'm going to try to figure out how we're going to analyze this. I want to make sure I don't miss something there. I would also add, Your Honor, that the case law provides on the issue of good faith that this court can affirm on a basis of good faith if the record supports it. Good faith was never addressed below. It was not raised by the government, and it was not addressed by Judge Campbell in his order. So if this court were to conclude that there were issues with regard to the FBI's good faith, then the appropriate remedy would be to remand for further proceedings on that issue. What about the issue of severance? Because the government, I believe they did argue severance below in the alternative. I do not believe so, Your Honor. But I also would, to respond to your specific question, severance is a principle that allows a court to sever a portion of a warrant that is overbrought. It is not a— The portion going back to the creation of the account, that part maybe should have been stricken. But you're on the other side. You're the forward part, which seems to be the good part. The retrospective back seven years, maybe that was bad. And so maybe that phrase should—why doesn't that fit within the doctrine of severance? Because as I understand the doctrine of severance, when a search warrant identifies multiple items to be seized, if one of those items is overbought, that can be severed and the rest of the warrant enforced. Here, there was just one grant with regard to our client. Search his entire email. And in that court, you can't sever evidence. That is not how it works. You can only sever from— What the government is arguing is not to sever a portion of the warrant. They're asking to just let the evidence in. But how would that work in the normal case? The government could always argue, yeah, we didn't have probable cause for that. But we found something else going forward. So it's okay. Sever. There is no— It seems like what they're arguing is that what they found was within the realm of what they had probable cause for if the warrant had been properly limited. You know, the case would be very different if they had found emails back from 2006, six years before here, for which they arguably had no probable cause. Then it would be very different. But this seems to be within the heartland of what a properly framed warrant would have captured. I disagree on a factual basis simply because there never were any emails discovered at all. Well, I'm referring to emails, messages. Right. I don't believe this is an appropriate case for severance because what we have here is a complete review of every email, every Instagram Mr. Eller ever received on his account. And we're not talking about just the seizure. That was—every one of those emails was reviewed. Every one of those instant messages was reviewed. To come back now and say, well, you did have probable cause, maybe. I don't believe that that's what severance stands for. I don't know if I've answered your question adequately, and I will tell you that in preparing for our argument, I tried to find a case that either went against me or supported me. I would point the court to the Flores decision, which when I first read, thought, that is a very bad case for my client. But if the court looks at that, in Florence, Flores, this court did not reach the question of overbreadth, and it applied the question of severance without really any analysis at all. So other than the potential Flores, I believe that this court's precedent doesn't support the type of severance the government is requesting in this case. I'm going to give you a little extra time, counsel, because we've had a lot of questions for you. But I do want to ask you about your sufficiency argument. I want to make sure I understand what you're arguing. So first, the sufficiency argument you're making only applies to counts one through four, correct? Yes, Your Honor. Okay. Now, are you arguing that in the messages that Eller allegedly had with these people in the Philippines, that either one, because they were with an intermediary, therefore cannot violate 2422, or that really he wasn't trying to entice anyone, he was basically haggling about the price, not trying to encourage anyone to do an illegal act? Is it both of those arguments, one of those arguments? Just the latter, Your Honor. Just the latter. Just the latter. And as troubling and disturbing as those instant messages are, those exhibits show no indication that Mr. Eller ever was attempting to overcome or to entice the victim, the person under the age of 18, to consent. There was no attempt to overcome. The language is an attempt to achieve the mental act of assent. And in this case, that never occurred. Sadly, the victims in this case were treated as commodities, and interchangeable commodities. There was never any consideration about the actual assent. And the Governor makes the very adequate point, or the very accurate point, that a child can never consent to any type of sexual activity. That's not really the issue here. The issue was what was Mr. Eller trying to do. He may have committed other crimes based on his acts, but it was not a violation of 2422B. Right, and you agree because there doesn't even need to be a real person on the other side. No, the case law in this circuit and all the others is quite clear that an intermediary can be the venue through which the defendant seeks to consent. You're just saying in this particular case, the facts don't show him trying to do that. Exactly. There was no evidence from which a jury could reasonably have found that. Thank you. And we'll go ahead and give you two minutes in rebuttal. May it please the Court, Your Honors, I'm Peter Kosinetz, representing the United States. To start with the issue of overbreadth here, the issues of good faith and severance provide two independent ways of affirming the omission of the evidence here. And in addition, I think the Court could also find that the warrant as issued itself wasn't impermissibly overbroad. But I think all of these different pathways are rooted in the Court's own cases. If you have a limited amount of information about communications occurring in a discrete period of time, in 2012, that gives you probable cause and authorization to search nine years' worth of communications? Well, I think we have to keep in mind the probable cause that we have here, which is that, as I read the paragraph 59 of the search warrant affidavit, that there wasn't just a single email, but that there were 60 images that were transmitted over a several-month period from a Yahoo user in the Philippines who was linked to a scheme that had been producing live-streamed shows showing graphic physical and sexual abuse of children for the last several years. And so what we have in the case law leading up to the issuance of this warrant, dating back for almost two decades or more, are several cases where there was even a lesser showing of probable cause than what we have here, but this Court upheld broad searches of electronically stored information to find evidence of child exploitation crimes. So it's really, I think to answer your question, Your Honor, one way of looking at it is just to look at that body of case law that had developed over the last couple of decades. Let me give just a couple of examples. In the Shesho case decided just a year before this warrant was issued, this Court upheld the search of a defendant's entire computer system based on a single upload of one video at one point in time to one website. And it upheld the search without any sort of restrictions on time frame or otherwise. And the Court alternatively found that the good faith exception to the exclusionary rule applies because this is at page, I think, 1046 of that decision. This Court has repeatedly upheld similarly broad searches on even lesser showings of probable cause. There were a couple of decisions before Shesho. The Brobst case, the Krupke case from 2009-2011, on the basis of a single observed illicit image, the Court authorized searches of the defendant's entire computer system for evidence of child pornography crimes. The Hay case, and this is a particularly important one here, there was a case decided by this Court in the year 2000, United States v. Hay, in which the defendant raised another child pornography case in which the defendant raised really the same overbreath objection that we have here, that there was no time frame limitation and other kinds of search-type limitations. And in that case, you had just a seven-minute period of time where 19 images, there was probable cause to believe the defendant had received 19 images over a seven-minute period. The Court didn't say you only have probable cause for the period of time around that transaction or you only have probable cause with respect to the source of that transaction. Instead, the Court said that it was sufficient there that the subpoena was, I'm sorry, the warrant was narrowed to searching for fruits, evidence, and instrumentalities of violations of the two child exploitation statutes that are also identified in the warrant. What was specifically authorized to be searched in that case? The defendant's entire computer system. Particular devices. Right, right, correct, Your Honors. But if somebody sends, you know, an email with a fraudulent scheme or something at a particular time, does that mean that you can search their Yahoo account back 25 years? No, no, Your Honor. I think in the context that we have here, searches for electronic information involving the trafficking and child pornography, particularly over the Internet, through the use of computers and so forth, this Court has pursued a path that has allowed broad-based searches. Now, not unlimited. I mean, there have to be certain limitations, such as the limitations we had here where you have in the preamble, I'm sorry, to the items to be seized in the attachment to the search warrant. Here, attachment B-2. This is at ER 2045. You have specific instructions that the items to be seized from the search have to be evidence or fruits or instrumentalities of violations of the two child exploitation statutes that were being investigated here. And then you had, following that, a number of other descriptions of the items to be seized. And so that's really very similar to what we had in the Hay case, the Shesho case, and this other robust body of law. So really viewed against the context of all. And by the way, those cases, Your Honor asked about whether the Cow case had been read to limit these types of searches. It hasn't, Your Honor. The Hay case expressly distinguishes Cow as not applicable in this situation, and none of these other cases have read Cow in the way that defense counsel suggests. So there was no facial overbreath, at least with respect to the way the law had developed up to the point at which the warrant was issued here. So for all of those reasons, the good faith exception clearly applies. To the extent that one would look at the law in the D.C. Circuit where the warrant was issued, we've identified a case. But am I right that at the time the warrant was issued, no one knew, including the magistrate judge who signed it, how far back this account went? I mean, because some Yahoo accounts go back to the 1990s, and this said from the origin of the account. Did the magistrate even have a clue as to how many years this was going back? I don't think so, Your Honor. I don't think that is— Is that reasonable to authorize searches with no idea what you're doing? Well, I think in the context of the case law that had developed here where you have these broad-based searches of the defendant's computer systems, there was no way of knowing how far back those computer systems went You could have found out from Yahoo when this account was created. You could have also found out when the account with which he communicated was created as well. Right, Your Honor. But in none of these cases did the court require any kind of time restriction. And this kind of goes back to the issue, again, of the collector of child pornography and the issues involving that that have been widely recognized by this court and by circuits across the country. That where you have indicia of somebody who has received child pornography or sought it out, not in an accidental way or in a one-time instance, but seems to be engaged maybe with people who are involved in a network of transmitting child pornography, that there is probable cause to take a broader base to the search. Your Honor also talked about the doctrine of severance, which we submit as just another alternative way of affirming the omission of this evidence. The Flores case involved a search for a Facebook account. And when the warrant issued, I'm not sure it was clear how far back that account went. It turned out it went back six years. The search involved the production of 11,000 pages of information, only 100 of which turned out to be relevant to the investigation. But this court upheld the omission of the relevant evidence that had been produced under the doctrine of severance, saying there was at least enough probable cause to support the discovery of that information that was used at trial. And so the court essentially indicated that... Was a severance line drawn in Flores? And how does that relate to, analogize to this case? Yes, Your Honor. So the court basically looked at the evidence that had actually been used at trial, which were messages on the defendant's Facebook account that were from the time of, or nearer in time to the defendant's arrest, referencing that the defendant was going to be carrying drugs across the border, the crime that was at issue there. And the court said, well, look, under any kind of narrow conception of temporal scope, those messages clearly fell within it, so we're going to affirm their use here. And I think... What period do you have to cover? I'm sorry, what was that? Yeah, I'm trying to figure out if we were to invoke some kind of doctrine of severance here, we might sever, for example, everything between 2005, 2006 to 2012, so the time the count was set, until the time period for which we actually had an email from the Philippines.  But if you were to go forward, how far do we have to go in order to collect, in order to encompass the materials that you used at trial? Yeah, I think you would go up until the time the warrant issued, because there was probable cause. And that would be 2014? Until, right, November of 2014. So because the probable cause affidavit set forth that the supplier of child pornography to the defendant was very closely linked to this network of individuals in the Philippines who also used Yahoo to communicate with buyers in the United States to produce and sell child pornography, including these live stream sex shows, and that that had been going on since approximately 2010, so for a period of several years. So you have that basis of probable cause. You also have other information in the search warrant affidavit, paragraph 21F, this is in ER 2025, indicating that collectors and distributors of child pornography use online services to retrieve and store child pornography. And paragraphs 21G and 26, that Yahoo services allow users to kind of move files around and store them in different places and to archive them, and that warrants for such accounts have revealed, stored, emailed, sent, or received many years prior to the date of the search. So there's really, even something that is received in 2012, the user could potentially delete that, those images, but store it, but reproduce them, kind of copy them and store them somewhere else, maybe in a file created more recently. There really is no way of knowing. In terms of what was used in this case, is it all from 2012 forward, or was anything used at trial that precedes 2012? No, it was all 2012 forward, specifically 2013 and 2014, Your Honor. So I think whether you look at this through the lens of severance or good faith, there are two clear paths to affirmance here. Do Your Honors have any other questions on that issue? With respect to the sufficiency of the evidence on counts one through four, just a couple of quick points. The defendant, of course, has a very high burden, has to show that construing all of the trial evidence in light in favor of the verdict, no reasonable fact finder could have found that the government had met its burden. And the defendant talks about achieving or intending to achieve the act of assent. Several of the cases in the defendant's reply brief were actually quite illuminating, and I would direct the Court's attention to the McMillan case in particular from the Seventh Circuit, which, and this is at page 1036, recognized, quote, that the essence of a 2422B crime is an attempt to obtain the minor's assent, which can be done, by example, by persuading a minor's adult guardian to lead a child to participate in sexual activity. And the kind of fact patterns that we see in these cases are situations where the defendant talks to the adult intermediary and tries to persuade them to procure children to engage in these activities, describes in graphic detail what they want to see, and maybe even asks that the intermediary communicate with the minors about those plans. Here we have all of that, and we have something even more powerful that's not discussed in the case law, which is evidence of actual payment by the defendant to these intermediaries to procure the children's participation. And I'd just like to highlight a couple of items from the trial record that show that the government proved this. At ER 991, in communications with Beauty Jessica, the defendant asked the intermediary, is your sister, 13-year-old sister, okay with having Hyman break? In communications with Handsome Justin Foryou, describing a sex show involving four children, ages 8 to 12, for which he was paying $100, are they okay with participating in the response at ER 927? I already talked to the four girls, and they are willing to do all you want, and you will be satisfied for it. If that's not evidence sufficient to uphold those verdicts, it's hard to imagine what would be for all these reasons we ask that you affirm. Thank you, counsel. Very briefly, I'd like to identify a few other reasons why Flores is not controlling in this case. Flores was a Facebook account case. And Facebook is different than email. Facebook requires the user to affirmatively post information. Perhaps expectations of privacy are less important than there. And also— The rationale of Flores seems to be that, yes, there were no temporal limitations, but severance applies because it says it fell well within even the narrowest of temporal limits. Why isn't that the case here? Because if there had been proper temporal limits, if somebody had thought about this issue and focused on it, it would have been at least from 2012 to the date of the warrant, and that covers everything in the case. Well, Judge Collins, I respectfully disagree that that would have been the appropriate temporal range all the way up to the granting of the warrant, when in this case the only evidence to support probable cause was the receipt of— and I disagree with counsel's description. There's nothing to be read from the affidavit to suggest that my client received multiple emails. It was just showing a transfer of 60 images. And I don't believe that probable cause would have opened up to a search of all of 60— But the warrant application also had, as is typical in these cases, you know, the agent's knowledge and experience about how child pornographers work, what their practices are, which supports a notion that if you find this one period, there's probably more going on around the time period. You're correct, Your Honor, and my response to that would be that Mr. Eller proves the fallacy of those expert statements in affidavits. Mr. Eller was accused—supposed to be a collector of child porn, and he's still spoken about that way. He never had any child porn in any of his email accounts, any of his computers, anywhere. And also, with regard to the suggestion that we may be looking at a different standard under the Fourth Amendment for child porn cases, I am aware of no authority that would allow that. And finally, with regard to the Shesso and Hayes cases, those are computer cases which allow for a totally different type of search. What was required in this case was a reading of every single email and every single instant message in Mr. Eller's account. So we would ask that the Court determine that— I want to stop you for just a minute, Counsel. So on Shesso, I mean, we went through a number of cases there talking about very, very broad searches that involved entire computer systems. Is there a difference between physically picking up the tower and taking it down to FBI headquarters and searching everything that's on a hard drive versus going into a Yahoo account? I believe so, Your Honor, because an expert, a computer expert, can look at a hard— and I am not one, so I'm telling you the best of my understanding. That can be a more laser-focused search of that instrument. Whereas in this case, the only way for the government to conduct its search was to read every aspect of Mr. Eller's life in his emails and instant messages. Shesso doesn't— I mean, the scope of the information that might be available to the FBI if they seize a tower and they seize hard drives and things like that might be breathtaking because there might be an enormous amount of stuff. You're saying that they can run a more particularized search because they can use, what, different kinds of search terms and therefore avoid looking at some things? Well, for example, let's say on a computer there is a file that has medical records or counseling records. If the government had searched those in those computer cases, I think it would be difficult for this Court to find that there was problem caused to conduct that search. That is solely concerned with the— How do you know that they're medical records? You don't. Don't you have to look at them to see that they're medical records? I mean, if they're labeled as medical records, we don't have to take some of these word for it, right? You don't necessarily need to read them, but that is the legitimate point judged by me. So is there any way for the government in this case to seize the Yahoo account, to look at the e-mails, and to do it with a particularized search? That is, so in the same way that we might take a hard drive and say, okay, we're looking for, you know, hardcore, you know, something or other, hardcore pornography, and thereby avoid looking at the medical records, is there some way to do that with the e-mails that would be analogous? Not that I'm aware of, Your Honor, but what I am arguing is that what could have been done is a search for the specific information of which there was probable cause, 2012. That search could have been conducted without any concern about any dissipation of evidence, any loss of evidence, and the government could then have come back and said, we found what we thought we would find, and then all of Mr. Kosnitz's arguments about child pornography collectors and those things would have greater weight. That is why the search has to be limited to what, to confirm the suggestion of probable cause. And here it was a fishing expedition. So we would ask that the court reverse. Thank you very much. All right, thank you, counsel. Thank you both for your briefing and argument in this very interesting case. This matter is submitted.
judges: BYBEE, OWENS, COLLINS